Brenda Joyce GAINOUS, Appellant,

v.

Thomas Earl GAINOUS, Appellee.

No. 01–04–00427–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 21, 2006.

Brenda appeals from the judgment denying her motion for enforcement or, alternatively, motion for clarification of the 1995 divorce decree between herself and her former husband, Thomas. We determine (1) whether some of Brenda's challenges were collateral attacks, which could be raised after the trial court's plenary power had expired, on a post-divorce qualified domestic relations order ("QDRO") and (2) whether the divorce decree awarded Brenda half of Thomas's benefits under the Houston Firemen's Relief and Retirement Fund ("the Fund").[1] We reverse the judgment and remand the case.

## Background

Brenda and Thomas were married on April 14, 1973. On June 19, 1978, Thomas began working for the Houston Fire Department. He then began participating in the Fund, which was a defined-benefit plan. The couple was divorced, by consent decree, on October 9, 1995, before Thomas was eligible to retire from the fire department. The decree provided, in pertinent part, that each party was awarded "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Neither party appealed the divorce decree, and no post-judgment motion challenging the decree appears in the record.

On January 25, 1996, the trial court entered a QDRO to effectuate the decree's division of the Fund's benefits. The record does not reveal who sought the QDRO, but it does show that Brenda sent the QDRO to the Fund. The QDRO provided, in pertinent part, as follows:

4. *Plan Information.* On the 9th day of October, 1995, [Thomas] had 16 years 11 months and 19 days of ser-

Lynn S. Kuriger, Teresa J. Waldrop, Houston, TX, for Appellant.

Richard C. Mumey, Robert C. Kuehm, Houston, TX, Vincent L. Marable, III, Paul Webb, P.C., Wharton, TX, for Appellee.

Panel consists of Justices TAFT, KEYES, and HANKS.

## OPINION ON REHEARING

TIM TAFT, Justice.

Appellant, Brenda Joyce Gainous ("Brenda"), has moved for rehearing of the Court's August 24, 2006 judgment. Appellee, Thomas Earl Gainous ("Thomas"), has filed a response to Brenda's motion. After due consideration, we grant Brenda's motion for rehearing and withdraw our opinion and judgment dated August 24, 2006. We issue this opinion and judgment in their place.

---

1. The Houston Firemen's Relief and Retirement Fund is now known as the Houston Firefighter's Relief and Retirement Fund.

*Williams v. Houston Firemen's Relief & Ret. Fund,* 121 S.W.3d 415, 415 n. 1 (Tex.App.-Houston [1st Dist.] 2003, no pet.).

vice under the Plan. [Thomas's] total contributions as of such date are $37,967.47. [Thomas's] average monthly salary (as defined in the Plan) as of such date is $3,163.79.

5. *Benefit Award.* The Court hereby awards to [Brenda] 50% of each payment otherwise payable to [Thomas] from the Plan after the date specified in Paragraph 4, but only with respect to the portion of such payment that is based on [Thomas's] accrued benefit as of such date (taking into account only contributions as of such date). If the payment to [Thomas] is a refund of contributions, the benefit calculated as of the date specified in Paragraph 4 shall be adjusted on a proportionate basis for any earnings attributable to such benefit under the terms of the Plan from such date to the date of distribution. *This Paragraph does not award [Brenda] any interest in any monthly amounts credited to any DROP [deferred retirement option plan] account established for [Thomas] under the terms of the Plan. This award applies to each type of benefit distribution under the Plan (including a service, deferred, or disability retirement pension, and a withdrawal of contributions) other than a distribution from any DROP account established on behalf of [Thomas].* The provisions of this Paragraph 5 shall be construed *to fix the amount (but not the type) of [Thomas's] benefit that is subject to division and payment to [Brenda]* as of the date set forth in Paragraph 4, and shall be determined under the terms of the Act [TEX.REV.CIV. STAT. ANN. art. 6243e.2(1) (Vernon Supp.2006) ] in effect on such date. *The award to [Brenda] herein shall not be increased by [Thomas's] additional contributions, service accruals, or salary increases* occurring after the date set forth in Paragraph 4.

6. *DROP Account. Notwithstanding any other provision of this Order, [Brenda] shall not share in any portion of the contributions to or distributions from a DROP account established under the Plan on behalf of [Thomas].*

7. *Cost of Living Adjustments. The amount payable to [Brenda] under Paragraph 5 shall not be increased by any cost of living adjustments made to [Thomas's] benefit after the date set forth in Paragraph 4.*

8. *Time and Manner of Payment.* The Plan shall make payments to [Brenda] of the amount specified in Paragraph 5, if, as, and when payments are made to [Thomas]. . . .

. . . .

11. *Limitations.* This Order and the award to [Brenda] herein is expressly made subject to the following provisions:

. . .

g. *This Order shall not be interpreted to award [Brenda] any future benefit increases that are provided or required by the Legislature.*

h. In the event that after the date of this Order, the amount of any benefit otherwise payable to [Thomas] is reduced by law, the portion of benefits payable to [Brenda] shall be reduced by a proportionate amount.

(Emphasis added.) Neither party appealed the QDRO, and no post-judgment motion challenging the QDRO appears in the record.

On June 19, 1998, upon 20 years of service with the fire department, Thomas became eligible to retire. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 4(a) (Vernon Supp.2006). Rather than retire, however,

Thomas elected to participate in the Fund's Deferred Retirement Option Plan ("DROP") on November 1, 1998. *See id.* § 5 (Vernon Supp.2006). Under the Fund's DROP, Thomas could, for up to 10 years, continue as an active employee while having an amount equal to his service-pension benefit,[2] plus continued pension contributions from his salary, credited to a "notional" DROP account, with the account's total sum to be distributed to or held for him upon retirement. *See id.* By the end of October 2003, Thomas's DROP balance with the Fund was $157,033.72.[3]

In approximately August 2003, Thomas retired. Shortly before then, on June 25, 2003, Brenda filed a motion for enforcement or for clarification of the divorce decree and later amended that motion. Among other things, Brenda argued that (1) the QDRO "reduced and materially altered" the division of the Fund benefits by excluding her from sharing in any portion of the DROP payments; (2) "a conflict" thus existed "between the provisions of the [divorce] decree and the QDRO," so that the divorce decree's award to her of a portion of the Fund's retirement benefits "may not be specific enough to be enforceable by contempt" and should be "clarified"; and (3) she was also entitled to receive a portion of four other Fund benefits, which were not technically Thomas's service-pension distributions, but which

Thomas would receive at retirement from the Fund as part of his overall benefit. In all, Brenda sought an order clarifying that she was to receive not only her portion of the service-pension benefit that Thomas received (to which Thomas has never disputed that Brenda is entitled), but also a portion of the following Fund benefits, the dispute over which forms the basis of this appeal:

- the DROP funds, including a two percent increase in benefits accrued for each year of Thomas's DROP participation, but excluding bi-weekly contributions that Thomas continued to make to the DROP account while working during DROP participation;[4]

- an annual three percent cost-of-living adjustment ("COLA"), applied to her portion of Thomas's service-pension benefits and DROP account balance;

- a one-time, lump-sum payment of $5,000 that Thomas would receive upon retirement;[5]

- a $150 monthly supplemental payment, which Thomas would begin receiving upon retirement;[6] and

- an annual supplemental payment benefit, also called the "13th-benefit payment," which was intended to help pensioners of low income, and which

---

**2.** The "service-pension benefit" was the basic monthly pension benefit, in which a firefighter vested after 20 years of active service, that was calculated pursuant to, among other things, a formula based on years of service and average salary. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 4(a)-(b) (Vernon Supp. 2006).

**3.** Brenda's expert calculated that Brenda's interest in the DROP funds was $34,682.86 as of the same date.

**4.** The Fund plan, as required by applicable statute, provided that firefighters who partici-

pated in the DROP would still make bi-weekly pension contributions. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 5(b) (Vernon Supp. 2006); *see also id.* § 13(c) (Vernon Supp. 2006). Recognizing that these bi-weekly pension contributions were Thomas's separate property, Brenda advised the trial court that she was not seeking a portion of them.

**5.** *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 10B (Vernon Supp.2006).

**6.** *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 4(d) (Vernon Supp.2006).

Thomas could begin receiving upon retirement.[7]

Thomas responded below that (1) res judicata and estoppel barred Brenda's claim to the DROP funds and the COLAs because the 1996 QDRO, which she had not appealed, expressly precluded her receiving any of these benefits; (2) Government Code chapter 804 precluded her receiving a portion of the DROP funds;[8] (3) Government Code chapter 804 also precluded her receiving a portion of any post-divorce COLAs;[9] and (4) the Legislature did not create the remaining three benefits that she sought until after the divorce date, precluding their being community property.

In January 2004, after having held an evidentiary hearing, the trial court denied Brenda's motion to enforce or to clarify and rendered a take-nothing judgment against her. At the time of the hearing, Brenda was receiving approximately $500 per month from the Fund, while Thomas was receiving approximately $2,000. Brenda filed a motion seeking a new trial, reconsideration, or reformation. The trial court denied the motion. The trial court did not enter fact findings or legal conclusions.

### Standard of Review

We review the trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree under an abuse-of-discretion standard. *See In re Marriage of McDonald,* 118 S.W.3d 829, 832 (Tex.App.-Texarkana 2003, pet. denied). When a trial court makes no separate findings of fact or conclusions of law, we must draw every reasonable inference supported by the record in favor of the trial court's judgment. *See Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). Additionally, "the judgment of the trial court must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Lassiter v. Bliss,* 559 S.W.2d 353, 358 (Tex.1977), *overruled on other grounds, Cherne Indus., Inc. v. Magallanes,* 763 S.W.2d 768 (Tex.1989). Nonetheless, in cases in which the appellate record includes the reporter's record, the trial court's implied fact findings are not conclusive and may be challenged for legal and factual sufficiency of the evidence supporting them. *See Tucker v. Tucker,* 908 S.W.2d 530, 532 (Tex.App.-San Antonio 1995, writ denied). We review implied legal conclusions *de novo. See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996).

### The DROP Funds

Under issues one, two, and three, Brenda challenges the trial court's denial of her motion to enforce or to clarify the divorce decree to the extent that that ruling denied her any portion of Thomas's DROP funds.

### A. The Terms of the DROP

The Fund's summary plan description, like the statute on which the plan was based, provided that DROP participation, which was available to firefighters with 20 or more years of participation, would allow them "to accumulate, for up to ten (10) years, a separate sum of money toward retirement while still working as an active employee" and described that sum as a "cash amount for retirement to be paid in addition to your [the employee's] monthly

---

**7.** *See* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 10A (Vernon Supp.2006).

**8.** *See* Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004).

**9.** *See id.*

retirement benefit." [10] *See* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1), § 5(a)-(c) (Vernon Supp.2006). Both the statute and the plan provided that the DROP participant's monthly service-pension benefit amount would be established as of the DROP entry date (which would also be considered the date of service termination upon actual retirement later on), with the value of that monthly service-pension benefit being credited to the DROP account, along with all interest and the firefighter's pension contributions, earned during continued employment. *See id.* § 5(b), (c), (i) (Vernon Supp.2006). That is, as the Fund's summary plan description advised,

> When you enroll [in the DROP], you 'lock in' your service and benefit levels as of the date your participation in the DROP takes effect. . . . While you work, the Fund credits the value of your monthly retirement benefit (based on your service as of the date you entered the DROP) into a notional DROP account. . . . As long as you participate, the value of the retirement benefit calculated for you upon entry into the DROP and your employee contribution amounts are credited to your account each month, and your account earns interest.

*See id.* § 5(b), (c).

The statute and plan also provided that, upon the firefighter's actual retirement, the DROP account balances could be distributed in a lump sum, and the plan provided, alternatively, that the DROP sums could be left in the DROP account to accrue interest, less an administrative fee. *See id.* § 5(a), (e) (Vernon Supp.2006). Pursuant to both the statute and the plan,

the firefighter's monthly benefit at retirement would be increased two percent for every year of DROP participation, to be applied to the original service-pension benefit upon actual retirement, but not to be added to the DROP account. *See id.* § 5(a). In addition, the statute provided that

> A member who has made a DROP election is not classified as retired, eligible to be paid, or eligible to accrue or to receive any benefit that is accrued or received by a member who has terminated active service . . . unless the member who has made the DROP election has terminated active service.

*Id.* § 5(*o*) (Vernon Supp.2006).

## B. The QDRO's Provisions Concerning the DROP

The QDRO expressly precluded any portion of the DROP funds' being paid to Brenda. Like the QDRO, the Fund's policies and procedures provided that DROP "[c]ontributions (both monthly benefit payments and member contributions) to the member's DROP account [would] not be affected by a QDRO applicable to the member." [11]

## C. Brenda's Collateral Attack

 The QDRO, which was entered after the trial court's plenary power over the divorce decree had expired, clearly precluded Brenda's receiving any portion of the DROP funds. A QDRO is a final, appealable order. *See, e.g., Reiss v. Reiss,* 118 S.W.3d 439, 441 (Tex.2003) (considering appeal of post-divorce QDRO). Bren-

**10.** Brenda's expert explained that DROPs existed to allow certain federal tax benefits while an employee who is eligible for retirement continued to work.

**11.** However, the Policies and Procedures also provided that "[p]ursuant to a QDRO, if an

Alternate Payee is specifically awarded a dollar amount or a percentage of the member's DROP account, such amount or percentage will be distributed . . . in accordance with the member's election."

da did not appeal the QDRO. Res judicata applies to final divorce decrees and, under the same logic, applies to final post-divorce orders. *See Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex.1990) (divorce decree); *see also* TEX. FAM.CODE ANN. §§ 9.103, 9.104 (Vernon 1998). Moreover, Brenda had the QDRO approved by the Fund and relied on the QDRO for approximately seven years before her challenge. Accordingly, estoppel might also normally bar her challenge. *Cf. Waite v. Waite,* 150 S.W.3d 797, 803 (Tex.App.-Houston [14th Dist.] 2004, pet. denied) (noting, on appeal of divorce decree, that party who accepts judgment's benefits is estopped from challenging judgment by appeal).

### 1. Brenda's Arguments

■ Brenda recognizes these potential obstacles, but contends that she may nonetheless challenge the QDRO because hers is a collateral attack, which is not barred by res judicata or estoppel. Brenda reasons as follows: (1) the divorce decree awarded her a contingent interest in Thomas's service-pension benefits, which included the DROP funds as a matter of law; (2) the QDRO conflicted with the divorce decree by impermissibly restricting the division of Thomas's service-pension benefits by excluding the DROP funds from that property division; (3) the Family Code prohibits post-divorce orders that amend, modify, alter, or change the divorce decree's property division; and (4) the QDRO is void for impermissibly having done so.[12]

### 2. The Law of Collateral Attack

■ A collateral attack does not attempt to secure the rendition of a single, correct judgment in place of a former one, but, instead, seeks to avoid the effect of a judgment through a proceeding brought for some other purpose. *Armentor v. Kern,* 178 S.W.3d 147, 149 (Tex.App.-Houston [1st Dist.] 2005, no pet.). To prevail in a collateral attack, a party to the original judgment must show that the complained-of judgment is void, not simply voidable. *Id.* A judgment is void only when the court rendering judgment " 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.' " *Saudi v. Brieven,* 176 S.W.3d 108, 113 (Tex.App.-Houston [1st Dist.] 2004, pet. denied) (quoting *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987)). If the challenged order is only voidable, as opposed to void, the collateral attack fails. *Ramsey v. Ramsey,* 19 S.W.3d 548, 552 (Tex.App.-Austin 2000, no pet.) (expressly stating same in collateral attack of divorce decree); *see Armentor,* 178 S.W.3d at 149.

■ " 'Subject-matter jurisdiction may not be conferred by consent, waiver, or estoppel at any stage of a proceeding.' " *Saudi,* 176 S.W.3d at 113 (quoting *Tourneau Houston, Inc. v. Harris County Appraisal Dist.,* 24 S.W.3d 907, 910 (Tex. App.-Houston [1st Dist.] 2000, no pet.)). One may thus raise a collateral attack challenging a void order at any time, and res judicata is not a bar to the attack. *See id.* (reasoning that lack of subject-

---

**12.** Brenda also argues that the QDRO's DROP provisions are void because "there is no evidence" that whoever petitioned for the QDRO obtained service by citation on the other party. *See* TEX. FAM.CODE ANN. § 9.102(c) (Vernon 1998). However, we must presume that the QDRO was valid (that is, that service of citation occurred), and the burden was on Brenda to show otherwise. *See Stewart v.*

*USA Custom Paint & Body Shop, Inc.,* 870 S.W.2d 18, 20 (Tex.1994) (presumption); *Armentor v. Kern,* 178 S.W.3d 147, 149 (Tex. App.-Houston [1st Dist.] 2005, no pet.) (burden). Any gap in the record as to service of citation for the QDRO thus defeats this particular challenge. *See id.* Accordingly, we overrule this challenge under Brenda's issue three.

matter jurisdiction is fundamental error that may be recognized by appellate court sua sponte or by party for first time on appeal); *see also State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995) (indicating that one need not appeal void judgment). In a collateral attack, the challenged order is presumed valid, and the party challenging it has the burden to show that it is void. *See Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex.1994) (presumption); *Armentor*, 178 S.W.3d at 149 (burden).

### 3. The Validity of the QDRO's DROP Provisions

If Brenda is correct that the QDRO is void to the extent that it barred her from sharing in a portion of the DROP funds, then she may challenge those QDRO provisions even at this late time and despite having relied on the QDRO previously. Otherwise, her challenge fails because of res judicata and estoppel. Therefore, we examine whether the QDRO's challenged provisions are void.

#### a. The Trial Court's Jurisdiction to Clarify and to Enforce the Divorce Decree

A court that rendered a divorce decree generally retains continuing subject-matter jurisdiction to clarify and to enforce the decree's property division. Tex. Fam. Code Ann. §§ 9.002, 9.008 (Vernon 1998). Specifically, the court has continuing jurisdiction to "render further orders to enforce the division of property made in the decree of divorce … to assist in the implementation of or to clarify the prior order." *Id.* § 9.006(a) (Vernon 1998). Likewise, "[o]n a finding … that the original form of the division of property is not specific enough to be enforceable by contempt," the court has continuing jurisdiction to "render a clarifying order setting forth specific terms to enforce compliance

with an original division of property." *Id.* § 9.008(b) (Vernon 1998).

However, there are limitations on the enforcement and clarification powers of the court that rendered the divorce decree. For example, "[t]he court may specify more precisely the manner of effecting the property division previously made *if the substantive division of property is not altered or changed.*" *Id.* § 9.006(b) (Vernon 1998) (emphasis added). More specifically, the Family Code provides:

(a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.

(b) An order under this section that amends, modifies, alters or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment *is beyond the power of the divorce court* and is unenforceable.

*Id.* § 9.007(a)-(b) (Vernon 1998) (emphasis added); *see Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex.2003).

Thus, the court that rendered the divorce decree (or any other final order dividing property) also retains continuing, exclusive jurisdiction to render an enforceable QDRO (or similar order) "permitting payment of pension, retirement plan, or other employee benefits divisible … to an alternate payee or other lawful payee." Tex. Fam.Code Ann. § 9.101(a) (Vernon 1998). A party may petition the court for a QDRO in two circumstances: (1) the court has not previously issued a QDRO or similar order permitting payment of benefits from a pension, retirement, or other employee-benefits plan or (2) the plan ad-

ministrator (or person acting in equivalent capacity) has determined that a previously entered QDRO does not satisfy the requirements for a QDRO. *Id.* §§ 9.103, 9.104 (Vernon 1998); *see McKnight v. Trogdon–McKnight,* 132 S.W.3d 126, 132 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (refusing to affirm entry of amended QDRO when original QDRO did not conflict with terms of divorce decree). Furthermore, like a final divorce decree, a final QDRO may be clarified under Family Code section 9.008. *In re Marriage of Jones,* 154 S.W.3d 225, 228 (Tex.App.-Texarkana 2005, no pet.) ("Section 9.008 allows clarification of a QDRO that is technically adequate but for some reason needs to be made clearer.").

▮▮▮▮▮▮ A QDRO is a species of post-divorce enforcement or clarification order. *See Shanks,* 110 S.W.3d at 449 (indicating same by holding, "[A] court 'may not amend, modify, alter, or change the division of property made or approved in the decree of divorce.' ... The district court was therefore without authority to enter a QDRO altering the terms of the decree by limiting [former wife] to [an interest less than that awarded under the divorce decree].") (quoting Tex. Fam.Code Ann. § 9.007(a)); *In re Marriage of Jones,* 154 S.W.3d at 228 (indicating same by concluding, "Although [Family Code sections 9.101, 9.103, and 9.104] allow a trial court to create a QDRO where none exists, or to correct language in a QDRO that renders it defective, they do not permit a court to substantively change a property division. A court may not amend, modify, alter, or

change the division of property made or approved in the decree of divorce."). Therefore, as with any post-divorce enforcement or clarification order, a QDRO may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. *See Shanks,* 110 S.W.3d at 449; *In re Marriage of Jones,* 154 S.W.3d at 228; *Pate v. Pate,* 874 S.W.2d 186, 189 (Tex.App.-Houston [14th Dist.] 1994, writ denied); *see also* Tex. Fam.Code Ann. § 9.007(a).

The threshold issue is, thus, whether the trial court is without subject-matter jurisdiction to enter a post-divorce order that violates Family Code section 9.007 by amending, modifying, altering, or changing the divorce decree's property division because, if the court lacks subject-matter jurisdiction to enter such an order, then that order is void. *See Saudi,* 176 S.W.3d at 113. Conversely, if the trial court has subject-matter jurisdiction to enter such an order, then that order is erroneous and voidable, but not void. *See id.; Ramsey,* 19 S.W.3d at 552.

▮▮▮▮ Section 9.007(b) provides that orders amending, modifying, altering, or changing the divorce decree's property division are *"beyond the power* of the divorce court," and the section itself is entitled "Limitation on *Power* of Court to Enforce." Tex. Fam.Code Ann. § 9.007(b) (emphasis added). Similarly, when describing section 9.007's limitation on post-divorce enforcement and clarification, case law employs terms like "power," "jurisdiction," and "authority." [13] These terms in-

13. *See Shanks v. Treadway,* 110 S.W.3d 444, 449 (Tex.2003) ("no authority"); *In re Marriage of Jones,* 154 S.W.3d 225, 228 (Tex.App.-Texarkana 2005, no pet.) ("beyond the power," citing statute); *In re Marriage of McDonald,* 118 S.W.3d 829, 833 (Tex.App.-Texarkana 2003, pet. denied) ("outside the scope of the trial court's authority"); *Marshall v.*

*Priess,* 99 S.W.3d 150, 157, 158, 160 (Tex. App.-Houston [14th Dist.] 2002, no pet.) ("beyond the power," citing statute; "no authority"; and "exceeded its authority"); *see also Hurley v. Hurley,* 960 S.W.2d 287, 288 (Tex. App.-Houston [1st Dist.] 1997, no pet.) ("power"); *In re Marriage of Clark,* No. 07–02–0285–CV, 2004 WL 350988, at *3 (Tex.App.-

dicate matters of subject-matter jurisdiction. *See Reiss v. Reiss,* 40 S.W.3d 605, 613–14 & n. 8 (Tex.App.-Houston [1st Dist.] 2001) (indicating that these and similar terms indicate jurisdiction), *rev'd on other grounds,* 118 S.W.3d 439 (Tex.2003). Moreover, by their very nature, Family Code sections 9.002, 9.006, 9.008, 9.101, 9.103, and 9.104 provide for limited, postjudgment jurisdiction that may be invoked only in particular circumstances, rather than for plenary, original jurisdiction. *Cf. Helton v. R.R. Comm'n of Tex.,* 126 S.W.3d 111, 118 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (holding, in considering nature of statutory prerequisites to suit for judicial review from administrative ruling, that "[i]f a statutory requirement 'defines, enlarges, or restricts the class of cause the [trial] court may decide or the relief the court may award,' the requirement is jurisdictional.") (quoting *Sierra Club v. Tex. Natural Res. Conservation Comm'n,* 26 S.W.3d 684, 688 (Tex.App.-Austin 2000), *aff'd on other grounds,* 70 S.W.3d 809 (Tex.2002)). Accordingly, we hold that section 9.007 is jurisdictional and that orders violating its restrictions are void.

**b. The Divorce Decree's Division of Thomas's Retirement Benefits in the Fund, Including DROP Funds**

■ For the above reasons, we must next determine whether the QDRO's DROP provisions violated Family Code section 9.007 by conflicting with the divorce decree's division of Thomas's retirement-related benefits in the Fund. That is, we must determine whether the divorce decree's division of these benefits included DROP funds, so that the QDRO impermissibly precluded Brenda from receiving them at any time. If these provisions of the QDRO and the divorce decree conflict,

then the QDRO's DROP provisions are void and unenforceable; Brenda may maintain a collateral attack to challenge them; Brenda is entitled to the portion of these monies awarded her in the divorce decree; and the trial court could enter a clarifying order so providing. In contrast, if these provisions of the QDRO and divorce decree do not conflict, then the QDRO's DROP provisions are valid; Brenda's collateral attack against them will fail; Brenda is not entitled to any portion of the DROP funds; and the trial court did not abuse its discretion in denying her motion to enforce or to clarify for that reason.

■ "When interpreting a divorce decree, courts apply the general rules regarding construction of judgments." *Shanks,* 110 S.W.3d at 447. "Judgments should be construed as a whole to harmonize and [to] give effect to the entire decree." *Id.* " '[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used.' " *Id.* (quoting *Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex.1997)). "If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment." *Id.* "[W]hether a divorce decree is ambiguous is a question of law." *Id.*

The divorce decree awarded Brenda "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Nothing in the plain language of the divorce decree excluded benefits such as DROP funds from the division of Thomas's retirement-related benefits in the Fund. Moreover, the decree provides that Brenda receive half of the "*Houston Firemen's Relief and Retirement Fund* standing in the name of THOMAS E. GAINOUS," not

Amarillo Feb.25, 2004, no pet.) (memo.op.) ("lacked jurisdiction").

half of just the *service-pension benefits* standing in the name of Thomas E. Gainous. (Emphasis added.) This language is broad enough to give Brenda an interest in Thomas's Fund benefits like the DROP funds.

 In fact, this language is broad enough to award Brenda half of *all* of Thomas's benefits in the Fund, not just those that could be considered community property. The Texas Supreme Court has generally adopted the following formula for determining a non-employee spouse's community-property award of the employee spouse's defined-benefit plan when the latter began plan participation during marriage, but retired after divorce: 50% × [ (number of months married and in plan) ÷ (number of months in plan at time of retirement) ] × (monthly benefit that employee would have received at divorce date, whether then eligible to retire or not). *See Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983) (modifying apportionment formula in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977)). This formula excludes post-divorce increases in the employee spouse's retirement benefits—such as rais-

es, promotions, services rendered, and contributions—that are the employee spouse's separate property because they are attributable to his continued employment after divorce. *See Phillips v. Parrish*, 814 S.W.2d 501, 505 (Tex.App.-Houston [1st Dist.] 1991, writ denied). In awarding Brenda "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS," the divorce decree did *not* adopt a *Berry* formula. Rather, the divorce decree awarded Brenda half of *all* of Thomas's retirement-related benefits from the Fund, without the type of qualification that *Berry* requires. That is, the divorce decree's award to Brenda of Thomas's Fund benefits necessarily—albeit improperly—included some of Thomas's separate-property benefits in the Fund, *i.e.*, half of his separate-property, post-divorce benefits attributable to his continued employment.[14] *See Reiss*, 118 S.W.3d at 442 (holding that divorce decree, which provided that non-employee spouse "shall receive fifty percent (50%) of such retirement or pension benefit to which [employee spouse] is entitled" unambiguously awarded non-employee spouse half of total re-

---

**14.** Thomas views the DROP funds as his separate property because (1) the DROP account did not begin until after the divorce and (2) retirement benefits that are attributable to post-divorce employment are separate property. That is, Thomas views the DROP funds as *wholly new* benefits that sprang into existence when he became eligible to retire. In contrast, Brenda views the DROP funds as community property because (1) eligibility to participate in the DROP is based upon years of service, most of which occurred during the marriage, and (2) the monies paid into Thomas's DROP account (with the exception of Thomas's contributions during DROP participation) were merely deferred retirement benefits being held for him, and allowed to accrue interest, until he retired. That is, Brenda views the DROP funds not as wholly new benefits that sprang into existence when Thomas became eligible to retire, but, in-

stead, as *deferred service-pension benefits* (plus interest and COLAs) that Thomas merely allowed the Fund to keep until he left this employment.

The Fourteenth Court of Appeals, in a well-reasoned opinion adopting the position that Brenda takes here, has concluded that DROP funds paid as a benefit under a defined-benefit plan are community property, subject to just and right division to the extent that they were earned during marriage, with the exception of the employee spouse's post-divorce contributions. *See Stavinoha v. Stavinoha*, 126 S.W.3d 604, 612 (Tex.App.-Houston [14th Dist.] 2004, no pet.). We need not determine whether *Stavinoha* is persuasive in our case or whether Thomas's DROP funds were partially community property because, even if they were not, the unappealed divorce decree awarded half of them to Brenda.

tirement benefits, rather than half of community-property portion of those benefits, despite decree's repeatedly and expressly reciting elsewhere that pension benefits were "community property" and that court was dividing "community property");[15] *see also Shanks*, 110 S.W.3d at 447–48 (in concluding that unappealed divorce decree, which provided that non-employee spouse was to receive "a 'pro rata' interest ... of any and all sums received or paid to [employee spouse] from such pension or retirement plan," unambiguously awarded non-employee spouse half of total retirement benefits, rather than half of community-property portion of those benefits, court reasoned that "the trial court awarded [the non-employee spouse] an interest in all sums received under such *plan*, not an interest of presently accrued benefits under such plan") (emphasis in original). A division awarding a spouse the other spouse's separate property is unconstitutional and erroneous, but not void. *See Reiss*, 118 S.W.3d at 443. That mistake could have been corrected in a direct appeal, but it was not; it cannot be corrected 10 years after the fact. *See id.*

■ We disagree with Thomas that the phrase "standing in the name of THOMAS E. GAINOUS" can be construed to mean "on the day of divorce" and thus may be read to preclude the DROP funds from Brenda's award simply because Thomas was not then eligible to elect to receive them, *i.e.*, he did not then have 20 years of service. Even if contingent benefits' *unvested status* during marriage could somehow be equated with their *non-existence* during marriage,[16] this decretal language does not mean what Thomas claims. Rather, "standing in the name of THOMAS E. GAINOUS" modifies "the Houston Firemen's Relief and Retirement Fund," so that the decree awards Brenda an interest only in *Thomas's* retirement account funds. The phrase is not the equivalent of "on the day of divorce." When no one appeals a divorce decree, courts must generally enforce its unambiguous provisions as written, and those provisions favor Brenda. *See Shanks*, 110 S.W.3d at 447; *see also Reiss*, 118 S.W.3d at 442.

We further disagree with Thomas that the absence in the divorce decree of language such as "if, as, and when received by Thomas" indicated that the decree was intended to divide only those Fund benefits existing on the divorce date. The *Shanks* court recently concluded that phrases like that quoted immediately above are not terms of art evidencing an intent to value a pension plan at the time of receipt, rather than at the time of divorce; instead, they merely reflect the

---

**15.** We recognize that, in addition to using the decretal language cited above, the trial court recited elsewhere in the Gainouses' divorce decree that it was dividing the "estate of the parties," *i.e.*, the community-property estate. However, as indicated in the parenthetical above, the *Reiss* court construed a very similar decree to divide half of *all* retirement-plan benefits when the decree's decretal language purported to divide all of that asset, despite the decree's also having recited that the court was dividing "community property" and that the disputed retirement-plan benefits were part of that community property. *See Reiss v. Reiss*, 118 S.W.3d 439, 440 (Tex.2003). If the decree in *Reiss* could not be construed to

have divided only community property, then neither can this decree.

> Justice Hanks, in his concurring opinion, indicates that he joins only the judgment of the Court because he disagrees with *Reiss*. However, whether we disagree with *Reiss* is irrelevant: it is binding precedent that cannot be distinguished from this case.

**16.** *But see Cearley v. Cearley*, 544 S.W.2d 661, 662 (Tex.1976) (holding that retirement benefits earned by spouse during marriage are contingent community property, even though not then subject to possession and enjoyment).

contingent nature of the interest awarded, not that interest's value. *See Shanks,* 110 S.W.3d at 449 n. 7. Accordingly, the lack of this phrase does not indicate an intent either to value Brenda's award as of the divorce date or to award her only a portion of the benefits extant on that date, but merely acknowledges that the divided benefit might never come to fruition. *See id.*

We hold that the divorce decree unambiguously included the DROP funds in its award to Brenda of "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Because the QDRO precluded Brenda from receiving any portion of Thomas's DROP funds at any time, the QDRO impermissibly altered the decree's property division and was void to the extent that it did so. *See* TEX. FAM.CODE ANN. § 9.007(b). Because the QDRO's provision excluding the DROP funds from Brenda's award was void, Brenda could properly challenge it by collateral attack, and res judicata and estoppel did not bar her challenge.

### D. Disposition

For these reasons, we hold that the trial court abused its discretion by misconstruing the divorce decree as not having divided Thomas's DROP funds and, therefore, that the court also abused its discretion by denying Brenda's motion to enforce or to clarify to the extent that she sought a portion of Thomas's DROP funds. We sustain issues one through three to the extent that they challenge the trial court's refusal to enter an order enforcing or clarifying the divorce decree's award to her of a portion of Thomas's DROP funds.

### The COLAs

Also under issues one, two, and three, Brenda challenges the trial court's denial of her motion to enforce or to clarify to the extent that that ruling denied COLA increases to her portion of Thomas's service-pension benefits and of his DROP account balance.

Article 6243e.2(1) does not expressly mention COLAs, but Brenda's expert explained that COLAs were "non-statutory" benefits that the Fund had discretion to adopt under authority generally allowing increases to the Fund's benefits under certain circumstances. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 10 (Vernon Supp. 2006) (entitled "Nonstatutory benefit increases"). The Fund's summary plan description contained the following provisions concerning COLAs:

> Upon reaching eligibility, benefits (including survivor benefits) from the plan will be adjusted each year by a 3% Cost of Living Adjustment, or COLA. This adjustment will be added to your monthly benefit:
>
> ● Starting with the October after you ... retired if you were 48 years of age at the date of retirement.
>
> ● On your 48th birthday....
>
> If you are eligible for [COLAs] that are made during your participation in the DROP, your monthly pension benefit (being made to your DROP account) will be adjusted by the value of the COLA.

The 1996 QDRO expressly precluded the application of COLAs to Brenda's portion of Thomas's service-pension benefits (and of Thomas's DROP benefits, as well, because the 1996 QDRO excluded DROP funds altogether): "The amount payable to [Brenda] under Paragraph 5 shall not be increased by any cost of living adjustments made to [Thomas's service-pension or DROP] benefit[s] after the date [of divorce]."

Brenda again raises a collateral attack, arguing that the QDRO's COLA provision is void because the divorce de-

cree awarded her a portion of this type of benefit. For the reasons set out earlier, we conclude that, if the QDRO's COLA provision and the divorce decree's property division conflict, the QDRO's provision is void, and Brenda may maintain her collateral attack. We thus determine whether the QDRO is void in this respect.

As noted above regarding the DROP, nothing in the plain language of the divorce decree excluded benefits like CO-LAs from the division of Thomas's retirement-related benefits in the Fund. And as we recognized above, the decree provided that Brenda receive half of the "Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS," not simply half of Thomas's service-pension benefits. Finally, for the reasons set out above, we also reject Thomas's arguments that the decree's phrase "standing in the name of THOMAS E. GAINOUS" can be equated with "on the day of divorce" or that the lack of language like "if, as, and when received" limited the portion or value of Brenda's award to the date of divorce. We thus hold that the divorce decree's language is broad enough to include COLAs to her portion of Thomas's service-pension benefits and DROP account under the Fund, regardless of whether the COLAs can be considered community or separate property.[17]

We thus hold that the divorce decree unambiguously included COLAs to Thomas's service-pension benefits and DROP

funds under the Fund in its award to Brenda of "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Because the QDRO excluded COLAs from being applied to any award of Thomas's service-pension and DROP benefits that Brenda would receive at any time, the QDRO impermissibly altered the decree's property division and was void to the extent that it did so. *See* TEX. FAM.CODE ANN. § 9.007(b). Because the QDRO's provision excluding these COLAs from Brenda's award was void, Brenda could properly challenge it by collateral attack, and res judicata and estoppel did not bar her challenge.

For these reasons, we hold that the trial court abused its discretion by misconstruing the divorce decree as not having divided Thomas's COLAs on a portion of Thomas's service-pension and DROP benefits and, therefore, that the court also abused its discretion by denying Brenda's motion to enforce or to clarify to the extent that she sought COLAs on a portion of those benefits. We thus sustain issues one through three to the extent that they challenge the trial court's refusal to enter an order enforcing or clarifying the divorce decree's award to her of COLAs on a portion of those benefits.

### The Remaining Benefits

Finally under issues one, two, and three, Brenda challenges the trial court's denial

---

**17.** As it did with DROP funds, the *Stavinoha* court held that COLAs were contingent community property subject to division for the reason that they were granted upon eligibility to retire, which was governed by years of service (some of which occurred during the community's existence), and were not increases due to continued employment. *Stavinoha*, 126 S.W.3d at 613–14. The *Stavinoha* court's holding comports with our own court's view of post-divorce COLAs to retire-

ment benefits. *See Reiss v. Reiss*, 40 S.W.3d 605, 611 n. 5 (Tex.App.-Houston [1st Dist.] 2001), *rev'd on other grounds*, 118 S.W.3d 439 (Tex.2003); *Phillips v. Parrish*, 814 S.W.2d 501, 504–05 (Tex.App.-Houston [1st Dist.] 1991, writ denied). Again, it is irrelevant whether the COLAs were community or separate property because, even if they were separate property, the unchallenged divorce decree divided them.

of her motion to enforce or to clarify to the extent that that ruling denied her any portion of (1) the one-time $5,000 lump-sum payment; (2) the $150 monthly supplemental payment; and (3) the annual supplemental payment benefit, also called the "13th-benefit payment."

## A. The Divorce Decree's Language

■ As with the other benefits discussed herein, the divorce decree's award of "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS" does not expressly exclude these benefits from the property division; awards Brenda a half interest in "the ... Fund," rather than in simply Thomas's service-pension benefits; and cannot be read to restrict Brenda's interest to that existing on the date of divorce. Accordingly, whether these benefits were community or separate property, the divorce decree gave half of them to Brenda.[18]

## B. Disposition

We hold that the trial court abused its discretion by misconstruing the divorce decree as not having divided Thomas's one-time $5,000 lump-sum payment, the $150 monthly supplemental payment, and the 13th-benefit payment and, thus that the court also abused its discretion by denying

Brenda's motion to enforce or to clarify to the extent that she sought a portion of these three benefits. We thus sustain issues one through three to the extent that they challenge the trial court's refusal to enter an order enforcing or clarifying the divorce decree's award to her of these three remaining benefits.

## Government Code Section 804.003(g)(7)

■ Under issue four, Brenda argues that the trial court's judgment, to the extent that it concerns the DROP funds and COLAs, cannot be supported by an implied legal conclusion that Government Code section 804.003(g)(7) precluded the award of any of these funds to her. *See* TEX. GOV'T CODE ANN. § 804.003(g)(7) (Vernon 2004).

Section 804.003(g)(7) provides that a public retirement system "may reject a domestic relations order as a [QDRO] unless the order ... does not purport to award any future benefit increases that are provided or required by the legislature...." TEX. GOV'T CODE ANN. § 804.003(g)(7) (Vernon 2004). The Fund's policies and procedures provided that DROP contributions would not be affected by a QDRO. The 1996 QDRO provided, "This Order shall not be interpreted to award [Brenda] any future benefit in-

---

18. Article 6243e.2(1) provided that each of these three benefits would be paid to a firefighter who retired. *See* TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), §§ 4(d), 10A, 10B (Vernon Supp.2006). A firefighter was not eligible for retirement until he had at least 20 years of participation in the Fund. *Id.* § 4(a). For this reason, the *Stavinoha* court held that such benefits are community property-to the extent that the employee's years towards retirement were earned during the marriage-subject to division. *See Stavinoha*, 126 S.W.3d at 613. However, the Gainouses were divorced *before* the Legislature created these benefits; in *Stavinoha*, in contrast, the Stavinohas divorced in October 1995, *after* the Leg-

islature had created these benefits. *See* Act of May 21, 1997, 75th Leg., R.S., ch. 1268, § 1, 1997 Tex. Gen. Laws 4794, 4799 (amended 1999, 2001) (current version at TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), § 4(d) (Vernon Supp.2006)); Act of May 10, 1999, 76th Leg., R.S., ch. 211, § 9, 1999 Tex. Gen. Laws 687, 692–93 (amended 2001) (current version at TEX.REV.CIV. STAT. ANN. art. 6243e.2(1), §§ 10A, 10B (Vernon Supp.2006)); *Stavinoha*, 126 S.W.3d at 613. We need not determine whether these three benefits were community or separate property, however, because even if they were separate property, the uncontested divorce decree divided them.

creases that are provided or required by the Legislature."

Thomas argued below that section 804.003(g)(7) allowed the Fund to prevent Brenda from obtaining *any* QDRO at *any* time awarding her a portion of the DROP funds or a portion of COLAs on his service-pension benefits and DROP funds. In support, Thomas reasoned that, because the DROP account did not exist until after the divorce, that account was allegedly his separate property; thus, Thomas concluded, the account was also a "future benefit increase[ ] . . . provided or required by the legislature," and the Fund (and thus the trial court) could properly reject any QDRO purporting to make such an award—such as the one that Brenda sought by her 2003 motion to enforce or to clarify. He argued below that section 804.003(g)(7) precluded post-divorce CO-LAs for the same reasons.[19]

By its plain terms, section 804.003(g)(7) has nothing to do with whether a trial court may apportion future contingent retirement benefits like these in a divorce decree or whether these types of contingent benefits are community or separate property. A more reasonable interpretation of section 804.003(g)(7) than Thomas's is that section 804.003(g)(7) allows a public retirement system to reject a QDRO that awards this type of benefit increase when, *at the time that the QDRO is obtained,* that benefit increase has not yet matured or accrued. Once Thomas retired in approximately August 2003, the Fund could

no longer reject, under section 804.003(g)(7), a QDRO concerning Thomas's DROP funds and any COLA increases to Brenda's portion of Thomas's service-pension benefits and DROP account balance.

To read section 804.003(g)(7) as Thomas does potentially allows a public retirement system to refuse to qualify a domestic relations order that validly apportions matured retirement benefits that an unappealed divorce decree awarded to the non-employee spouse-properly or improperly. We do not deem the Legislature to have intended such an absurd result. *See* TEX. GOV'T CODE ANN. §§ 311.021(3) (Vernon 2005) ("In enacting a statute, it is presumed that: . . . (3) a just and reasonable result is intended. . . ."); 311.023(4), (5) (Vernon 2005) ("In construing a statute, . . . a court may consider among other matters the: . . . (4) common law . . ., including laws on the same or similar subjects; [and] (5) consequences of a particular construction. . . .").

We sustain issue four.

### Conclusion

We reverse the judgment and remand the cause for the trial court for further proceedings consistent with this opinion.

Justice KEYES, concurring.

Justice HANKS, concurring in the judgment.

---

**19.** Thomas's response to Brenda's motion to enforce or to clarify asserted section 804.003(g)(7) against only her request for a portion of his DROP funds and COLAs. He did not argue that that section precluded the entry of a QDRO awarding the three other contested benefits. The issue of whether section 804.003(g)(7) and the Fund's policies precluded a QDRO awarding Brenda a portion of the three remaining benefits does not appear to have been litigated below, and the

issue thus does not appear to have been a basis for the court's judgment, which did not recite the bases on which it was rendered. To the extent that the trial court could be construed as nonetheless having implicitly ruled on section 804.003(g)(7)'s effect on Brenda's request for a QDRO concerning the three remaining benefits, however, Brenda's challenge concerning that implicit ruling under section 804.003(g)(7) would be controlled by our discussion here.

EVELYN V. KEYES, Justice, concurring.

I withdraw my dissenting opinion issued August 24, 2006 and substitute this concurring opinion in its stead. I join the opinion of the panel on rehearing. I write separately to express my reasons for concluding that the divorce decree awarded Brenda a vested interest in one-half of the total amount of Thomas's future contingent interest in the Houston Firemen's Relief and Retirement Fund ("the Fund").

### Clarification of the 1995 Divorce Decree

The Gainouses' divorce decree, entered in 1995, provided that, as part of "a just and right division of the parties' marital estate":

> [BRENDA] is awarded the following as [her] sole and separate property, and [THOMAS] is hereby divested of all right, title, interest, and claim in and to such property:
>
> . . . .
>
> 5. One-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS.

The trial court orally rendered judgment construing the divorce decree as awarding Brenda one-half of Thomas's interest in the Fund "as of the date of divorce."

Brenda contends that the plain language of the 1995 divorce decree awarded to her at the time of the divorce, as her separate property, a present one-half interest in the

future contingent retirement benefits standing in Thomas's name in the Fund, to become effective at the time of Thomas's retirement, apportioned to the years of marriage during which those future benefits were accruing, including her portion of (1) Thomas's Deferred Retirement Option Plan ("DROP") funds, (2) Cost-of-Living–Adjustment ("COLA") benefits earned during the marriage, (3) a one-time $5,000 lump-sum payment made at Thomas's retirement, (4) a $150 supplemental payment, and (5) an annual supplemental payment benefit called the "13th-benefit payment."[1]

Thomas contends that the disputed benefits were properly denied by the 1996 Qualified Domestic Relations Order ("QDRO") because the decree awarded Brenda only one-half of the retirement benefits present in the Fund as of the date of the divorce. He argues that his DROP account, COLAs, 13th-benefit payments, supplemental payment, and lump-sum payment all constitute future contingent benefits that were not part of the community estate divisible on the date of the divorce because not even a contingent, unvested entitlement to those specific benefits existed until after the divorce; thus, he argues, they constitute his separate property under the terms of the decree and are not divisible.[2]

The task for this Court, therefore, is to determine, as a matter of law, (1) whether Brenda's half of Thomas's interest in the retirement plan, awarded to her at the

---

1. Each of these benefits was provided, like Thomas's entire interest in the Fund, pursuant to article 6243e.2(1) of the Texas Revised Civil Statutes, governing firefighters' benefits. *See* Tex.Rev.Civ. Stat. Ann. art. 6243e.2(1) (Vernon Supp.2006).

2. Thomas pointed out that section 804.003(g)(7) of the Government Code expressly provides that a public retirement sys-

tem may reject a QDRO that purports to award "future benefit increases that are provided or required by the Legislature." Tex. Gov't Code Ann. § 804.003(g)(7) (Vernon 2004). As our opinion explains, however, section 804.003(g)(7) applies to *QDROs*—not to divorce decrees. *See id.* There is no such limitation on divorce decrees.

time of divorce, was a present one-half interest in future contingent retirement benefits to be valued when those benefits actually accrued and were received in Thomas's name in the Fund or (2) whether the half of Thomas's retirement benefits distributable to Brenda when the assets matured and were received in the Fund was limited by the terms of the 1995 divorce decree to one-half of Thomas's share of the benefits available to firefighters eligible to retire in 1995, valued as of 1995.

### Terms of the Gainouses' 1995 Divorce Decree

"When interpreting a divorce decree, courts apply the general rules regarding construction of judgments." *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex.2003). "Judgments should be construed as a whole to harmonize and [to] give effect to the entire decree." *Id.* "[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Id.* (quoting *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex. 1997)). "If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment." *Id.* If the decree is "subject to more than one reasonable interpretation," the court "should adopt the construction that correctly applies the law." *Id.* "[W]hether a divorce decree is ambiguous is a question of law." *Id.*

The literal language of the divorce decree in this case awards Brenda as her separate property, as of the date of divorce, a present vested interest in "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." As of the date of divorce, there were no accrued and matured retirement benefits standing in Thomas's name in the Fund. Nor does anything in the language of the divorce decree limit Brenda's award of Thomas's future contingent retirement benefits to one-half of the type of retirement benefits available to firefighters who retired in 1995 or to the value of those particular assets as of 1995. Therefore, Brenda was necessarily awarded a future contingent interest in the total amount of Thomas's retirement benefits when they vested and became available for distribution as his portion of the Fund, *i.e.*, at his retirement. This conclusion is supported by well-established Texas law.

### Treatment of Future Contingent Retirement Benefits Under Texas Law

Neither Texas statutory law nor common law either expressly or implicitly prohibits trial courts from awarding in a divorce decree future contingent benefits earned during the marriage. To the contrary, under established Texas law, unaccrued and unmatured retirement benefits earned wholly or partially during marriage "constitute a contingent interest in property and a community asset subject to consideration along with other property in the division of the estate of the parties under [the predecessor to section 7.001] of the Family Code." *Cearley v. Cearley*, 544 S.W.2d 661, 666 (Tex.1976); *see also Taggart v. Taggart*, 552 S.W.2d 422, 423 (Tex. 1977). Such "retirement benefits are subject to division as vested contingent community property rights even though the present right has not fully matured." *Taggart*, 552 S.W.2d at 423; *see also Trahan v. Trahan*, 894 S.W.2d 113, 119 (Tex. App.-Austin 1995, writ denied) ("[M]ilitary retired pay is subject to division upon divorce as a vested community property right even if the present right to the pay had not fully matured.").

In *Cearley*, the divorce decree awarded the former wife a fractional interest in the former husband's future military retirement benefits if and when he received

them. *Cearley,* 544 S.W.2d at 661. In determining that the division of those future contingent benefits should be made effective as of the date of retirement, the supreme court stated, "The administration of justice will best be served if contingent interests in retirement benefits are settled at the time of divorce, even though it may be necessary in many instances for the judgment to make the apportionment to the nonretiring spouse effective if, as, and when the benefits are received by the retiring spouse." *Id.* at 666. The court explained that this method "will forego the difficulty of computing a present value and will fairly divide the risk that the pension may fail to mature." *Id.*

The supreme court has never overruled *Cearley* or determined that future contingent benefits cannot be awarded at the time of divorce. To the contrary: *Cearley* is still good law. Subsequently, however, in *Taggart,* the supreme court was faced with the problem of a divorce decree that divided community property, but failed to divide future contingent retirement benefits that had accrued during the life of the community. *Taggart,* 552 S.W.2d at 423. The court, therefore, developed a formula for courts to use in determining the community's interest in the employed spouse's future contingent retirement benefits and the non-employee spouse's share of that interest *when the decree fails to apportion those benefits. See id.* at 423–24. Because the Taggarts' marriage coincided with 246 of the 360 months that George Taggart had to serve in the Navy to receive retirement benefits, the court awarded Ann Taggart "one-half of 246/360th's of the retirement pay" actually received by George. *Id.* at 424.

In *Berry v. Berry,* 647 S.W.2d 945, 947 (Tex.1983), the supreme court retrenched on the *Taggart* formula. In *Berry,* as in *Taggart,* the divorce decree was silent as to the division of the husband's future contingent retirement benefits. *Id.* at 945. The former wife later brought suit to collect her community share of those benefits, and the trial court awarded her "one-half of such benefits as would have existed at the time of divorce" had her former husband then been eligible for retirement. *Id.* The supreme court affirmed the judgment of the trial court. *Id.* It held that, in a case in which the divorce decree is silent as to the division of future contingent retirement benefits, the non-employee spouse should be awarded one-half of such future benefits "as would have existed at the time of divorce," apportioned to the years of the marriage, as in *Taggart,* but, unlike *Taggart,* also valued at the time of the divorce. *Id.* at 945, 947. It reasoned that a court could not properly divide a future contingent interest in the employed spouse's separate property, *i.e.,* in the benefits that accrued by that spouse's labor after the divorce or that became available to plan retirees after the divorce. *Id.* at 947. However, the court expressly stated that its opinion was "not to be understood as overruling *Taggart v. Taggart* . . . or disapproving of its progeny . . . insofar as those opinions approve an apportionment formula for determining the *extent* of the community interest in retirement benefits," *i.e.,* as proportional to the years of marriage *vis a vis* the years counted towards the retirement benefits. *Id.* (emphasis in original) (citations omitted).

Since developing the *Taggart/Berry* formula for judicially apportioning future contingent retirement benefits not divided in a divorce decree, the supreme court has twice considered whether to apply the *Taggart/Berry* formula in interpreting a divorce decree that is *not* silent as to the division of future contingent retirement benefits, but expressly apportions those benefits in terms inconsistent with the

*Taggart/Berry* formula. *See Shanks,* 110 S.W.3d at 447–48; *Reiss v. Reiss,* 118 S.W.3d 439, 440–43 (Tex.2003).

In both *Shanks* and *Reiss,* rather than impute to the divorce decree the *Taggart/Berry* formula for apportioning future contingent retirement benefits, the supreme court interpreted the decree according to its literal terms—even though, in both cases, the divorce decree awarded to the non-employee spouse an unqualified interest in future contingent retirement benefits and, thereby, necessarily awarded that spouse a portion of the employee spouse's post-divorce benefit increases that were properly construed as separate property. *See Reiss,* 118 S.W.3d at 441–42 (holding that decree that awarded wife 50% "of such retirement or pension benefit to which [husband] . . . is entitled to receive" if and when he retired or was otherwise entitled to benefits "unequivocally awards [former wife] half of [former husband's] total retirement benefits under the plan, regardless of when they accrued," despite other language in decree referring to division of community property); *Shanks,* 110 S.W.3d at 447–48 (holding that unappealed divorce decree that provided that non-employee former wife was to receive "a 'pro rata' interest . . . of any and all sums received or paid to [employee former husband] from such pension [or retirement] plan" unambiguously awarded former wife pro rata portion of former husband's total retirement benefits, rather than pro rata portion of community-property portion of those benefits).[3] The court emphasized in *Shanks* that "the trial court awarded [the former wife] an interest in *all sums received under such plan, not* an interest of *presently accrued benefits* un-

der such plan." *Shanks,* 110 S.W.3d at 448 (emphasis in original and added).

The court opined in *Shanks:*

The fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award [the non-employee spouse] an interest only in the plan benefits that had accrued on the date of divorce. Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the *Taggart* apportionment fraction and instead clearly gave [the non-employee spouse] a twenty-five percent interest in the *total* amount (whatever that might be) to be paid to [the employee spouse] under the plan.

*Id.* Similarly, in *Reiss,* the supreme court acknowledged that by awarding the wife half of her husband's total retirement benefits "if and when" he retired, the trial court had mistakenly classified all of the former retirement benefits as community property, rather than as part separate property and part community property, and had thus mistakenly awarded the former wife a portion of her former husband's separate property. 118 S.W.3d at 442. Nevertheless, in both cases, the court concluded that, although the trial court's mistake in awarding to the former wife a portion of her former husband's separate property made the decree voidable if timely appealed, the decree was not void "because a court has jurisdiction to characterize community property—even if it does so incorrectly"; thus, absent a timely appeal, the judgment became final and could not be collaterally attacked. *Id.* at 443; *see Shanks,* 110 S.W.3d at 449.

---

**3.** The *Shanks* decree awarded the wife "a 'pro-rata interest' . . . of any and all sums received or paid to" the husband from his pension plan. *Shanks v. Treadway,* 110

S.W.3d 444, 445 (Tex.2003). It defined "pro-rata interest" as "25% of the total sum or sums paid or to be paid to [husband] from such pension or retirement plan." *Id.*

Here, as in *Reiss* and *Shanks,* the divorce decree expressly divided the total amount of Thomas's share of the Fund, awarding Brenda at the time of divorce a vested interest in "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS," when a portion of the Fund was actually allocated to Thomas, rather than apportioning her interest according to the years of the marriage as under the *Taggart/Berry* formula. The decree did not limit the portion of Thomas's retirement benefits distributable to Brenda at his retirement to the type of benefits available to retirees at the time of the divorce in 1995 or to the value of such benefits in 1995, even though, had the parties intended to apportion Brenda's interest in Thomas's share of the Fund to the years of the marriage or to limit her interest in Thomas's share of the Fund to the value of his interest had he been eligible to retire in 1995, they could have done so. *See Hurley v. Hurley,* 960 S.W.2d 287, 288–89 (Tex. App.-Houston [1st Dist.] 1997, no pet.) (holding that language that wife was to receive " 'one-half (1/2) of [appellant's] retirement benefits in the Mars Retirement Plan if, as and when received by [him]' ... is unambiguous, and it is fatal to appellant's claim that the benefits were to be valued at the time of divorce").

### Conclusion

Accordingly, I join in the panel's opinion and conclusion that, under its literal language, the divorce decree awarded Brenda at the time of the divorce a future contingent interest in "[o]ne-half (1/2) of the [total amount of the] Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS" at the time of his retirement, including a one-half interest in the DROP funds; the COLAs; the one-time, lump-sum payment of $5,000; the $150 monthly supplemental payment; and the 13th-benefit payment.

GEORGE C. HANKS, JR., Justice, concurring.

I withdraw my concurring opinion issued August 24, 2006 and substitute this opinion in its stead.

I join the judgment only, and I write separately and respectfully to express my disagreement with the Texas Supreme Court's opinion in *Reiss v. Reiss,* 118 S.W.3d 439 (Tex.2003), and to urge the supreme court to revisit that authority.

The majority opinion in *Reiss* would require us to conclude that the Gainouses' divorce decree awards one-half of Thomas's separate property to Brenda—something that, as a matter of law, she could not have received in the divorce decree. *See Reiss,* 118 S.W.3d at 442. I agree with the dissent in *Reiss* that argues the *Reiss* majority's holding fails to give due weight to the plain and unambiguous language of the divorce decree. *Id.* at 444 (Jefferson, J., Enoch, J., and Wainwright, J., dissenting). Following the analysis of the *Reiss* dissent, I would give due weight to the plain and unambiguous language found in the Gainouses' divorce decree and would hold that the decree awards Brenda one-half of the *community portion* of Thomas's retirement fund. The decree does not award Brenda one-half of Thomas's *separate property.* The separate property includes retirement benefits that were not created by the Legislature until after the divorce and that the Legislature has specifically declared may be excluded from division in a divorce decree. *See* TEX. GOV'T CODE ANN. § 804.003(g)(7) (Vernon 2004). This interpretation of the Gainouses' decree that divides only community property is consistent with the terms of the Qualified Domestic Relations Order ("QDRO") entered just 14 months after

the divorce decree. In the QDRO, the trial court clarified the terms of the divorce decree, and the QDRO has been relied upon by Thomas and Brenda for almost 10 years.

It is well established that, when construing a divorce decree, we read the decree as a whole. *Constance v. Constance,* 544 S.W.2d 659, 660 (Tex.1976); *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971). If a decree is unambiguous, we do not consider extrinsic matters to give the decree a meaning different from that of its literal language. *Wilde v. Murchie,* 949 S.W.2d 331, 332 (Tex.1997); *see Harrison v. Manvel Oil Co.,* 142 Tex. 669, 180 S.W.2d 909, 914–15 (1944). That does not mean, however, that we are free to interpret decrees based only on the literal meaning of a few isolated words, phrases, or sentences. *See Wilde,* 949 S.W.2d at 332; *see also Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1987).

In this case, the majority opinion in *Reiss* instructs us to focus on only one sentence of the decree, which states that Brenda is to receive "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." *See Reiss,* 118 S.W.3d at 442. However, the plain language of the paragraphs preceding that decretal sentence establishes that the decree was dividing only *community property* existing at the time of the divorce and not Thomas's or Brenda's separate property. The decree provides in pertinent part:

9. *Division of Marital Estate*

The Court finds that the following is a just and right division of *the parties' marital estate,* having due regard for the rights of each party and the child of the marriage.

IT IS ORDERED AND DECREED that *the estate of the parties* is divided as follows:

Petitioner is awarded the following as Petitioner's sole and separate property, and Respondent is divested of all right, title, interest and claim in and to such property:

. . . .

6. One-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS.

(Emphasis added.) The case before us is factually distinguishable from *Shanks v. Treadway,* 110 S.W.3d 444 (Tex.2003). In *Shanks,* unlike here, the decree stated that the trial court was awarding a percentage of the *total* retirement benefits, not just the community portion of the retirement benefits. *Id.* at 445; *see Reiss,* 118 S.W.3d at 444.

Here, the language of the decree provides that Brenda is entitled to receive "[o]ne-half (1/2) of the Houston Firemen's Relief and Retirement Fund standing in the name of THOMAS E. GAINOUS." Nevertheless, when construed in the context of the entire decree, it is unreasonable to conclude that this language awards Brenda an interest in the entirety of Thomas's retirement benefits, including that portion representing his separate property. The decree's structure and plain language, from beginning to end, evidence an intent to divide only the couple's community property. This construction is also consistent with Texas law at the time of the Gainouses' divorce. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex. 1977) (holding that both Texas Constitution and Family Code prohibit a court from divesting spouses of separate property). To interpret the decree as *Reiss* instructs us to do is inconsistent with the law

prevailing at the time of the decree's entry and gives effect to one isolated sentence over the construction of the decree as a whole.

The decree, when read in its entirety, unambiguously awards Brenda one-half of only the community portion of Thomas's retirement benefits. Accordingly, I concur only with the judgment.