

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-14-00319-CV

BRENDA F. PRICE                                                          APPELLANT

V.

MICHAEL D. PRICE                                                          APPELLEE

----------

FROM THE 233RD DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 233-524121-12

----------

## MEMORANDUM OPINION[1]

----------

Appellant Brenda F. Price appeals from the trial court's post-divorce-decree sanctions order. Because the sanctions order was void, we vacate the order and dismiss the appeal.

---

[1]*See* Tex. R. App. P. 47.4.

## I. BACKGROUND

After a bench trial on August 28, 2013, the trial court signed a final divorce decree ending Brenda's marriage to appellee Michael D. Price and ordering a division of the estate of the parties on December 18, 2013. On January 8, 2014, Brenda filed a motion to enter the qualified domestic relations orders (QDRO) regarding Brenda's and Michael's employee-benefit plans, which the trial court granted on January 29, 2014. *See* Tex. Fam. Code Ann. § 9.103 (West 2006). One of Michael's plans notified Brenda's attorney, Mellannise Henderson-Love, that the QDRO was not qualified because it "contain[ed] language . . . that . . . would require the defined benefit Retirement Plan to operate as a defined contribution plan."

On June 6, 2014, Brenda filed a motion to enter a modified QDRO, which was set for a July 2, 2014 hearing. *See id.* § 9.104 (West 2006). On June 14, 2014, Michael filed objections to Brenda's proposed QDRO and a motion for sanctions, arguing that Brenda's motion for a modified QDRO was brought in bad faith because she was "attempting to misrepresent to [Michael's] ex-employer and this Court that the divorce was granted on December 18, 2013." Michael's objections and motion also were set for a hearing on July 2, 2014.

At the hearing, Michael testified that Henderson-Love came to his office, sent him emails, and attempted to call him on the phone after the final divorce decree was signed—between December 2013 and February 2014—but while he was represented by counsel, Deborah Adame. The appellate record does not

show that the trial court took any other action on Brenda's motion or Michael's objections and sanctions request.

On July 8, 2014, Michael filed amended objections to Brenda's proposed, modified QDRO and an amended motion for sanctions. Michael stated that he was seeking sanctions against Henderson-Love "for directly contacting [him], by email and by telephone, when [she] knew or should have known that [Michael] has been and continues to be represented by his attorney, Deborah Adame." He also asserted that Henderson-Love "appeared at [Michael's] place of employment, and has caused a disruption and/or scene, at [Michael's] work place." Michael again alleged that Brenda's motion to enter a QDRO was brought in bad faith based on an incorrect date of divorce—December 18, 2013—and asked that the court order Brenda or Henderson-Love to pay his attorney's fees of $2,500. Brenda responded to Michael's amended motion by filing a plea to the jurisdiction, arguing that the trial court did "not have subject matter [jurisdiction] over the matters that [gave] rise to Michael['s] . . . Motion for sanctions."

The trial court held a hearing on Michael's amended objections and amended motion for sanctions on August 20, 2014. At the hearing, Henderson-Love clarified that her jurisdictional argument was that the trial court could only determine whether the allegedly incorrect date of divorce in Brenda's proposed, modified QDRO was sanctionable and had no jurisdiction over any other conduct by Henderson-Love. Michael testified that Henderson-Love sent him emails on

3

December 20, 2013 and March 5, 2014,[2] and called his cell phone number in early April 2014.[3] He also testified that Henderson-Love personally went to Michael's office on February 14, 2014, and caused a "disturbance."[4] Michael was not at the office on February 14, 2014. Henderson-Love spoke to a receptionist, who testified Henderson-Love was "disrespectful," and a human-resources employee, who testified Henderson-Love hand-delivered a "packet," which was unusual. Michael stated that he had incurred $8,000 in attorney's fees regarding the objections and motions for sanctions. At the end of the hearing, the trial court orally granted the amended request for sanctions and awarded $2,500 attorney's fees as a sanction against Henderson-Love. The trial court also orally granted Brenda's motion to enter a modified QDRO and signed a stipulated, modified QDRO.[5] The trial court signed the sanctions order on

---

[2]Henderson-Love's December 20, 2013 email had as its subject "Good evening!" with a message that was an embedded link to a web site and a quote under her name: "When in doubt, use brute force - - Ken Thompson." The March 5, 2014 email had as its subject "Hello Michael!" with a message that was an embedded link to a different web site and another quote under her name: "Life has a funny way of biting you when your pants are down. - - Michael Molloy."

[3]Henderson-Love attempted to call Michael's cell phone "three or four" times "back-to-back" during April 2014. Michael did not answer the calls but noted the number and later discovered it was Henderson-Love's office number.

[4]It appears that Henderson-Love was attempting to deliver a QDRO to Michael's employer after it had been "lost two times."

[5]The stipulated QDRO stated that the "divorce was granted on August 28, 2013."

4

September 5, 2014, granting Michael's amended motion for sanctions and specifically finding that Henderson-Love "directly contacted" Michael while he was represented by counsel. The sanctions order was not based on the dispute over the correct date of the divorce.

## II. DISCUSSION

Brenda now appeals from this sanctions order and asserts that the trial court did not have plenary power at the time it entered the sanctions order. Michael has not responded to Brenda's arguments. We review a trial court's subject-matter jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Brenda argues that the trial court did not have jurisdiction to enter the sanctions order because Henderson-Love's alleged conduct "had nothing to [do] with" Brenda's motion to enter a modified, enforceable QDRO and because the trial court's plenary power had expired. A trial court's plenary power expires thirty days after a final judgment is entered in the absence of a timely postjudgment motion. *See* Tex. R. Civ. P. 329b(d). No such motion was filed after the trial court signed the final decree of divorce on December 18, 2013, which was clearly a final judgment; thus, the trial court's plenary power expired on January 17, 2014. Although some of Henderson-Love's conduct occurred before January 17, 2014, Michael did not file a motion for sanctions, and the trial court did not rule on any motion for sanctions, during this jurisdictional window. After a trial court loses plenary power, it has no authority to award sanctions.

5

*Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996) (op. on reh'g).

In divorce actions, however, a trial court has continuing, yet limited, postjudgment jurisdiction to enforce and clarify the decree's property division and to render an enforceable QDRO after its plenary power expires. *See* Tex. Fam. Code Ann. § 9.006 (West Supp. 2014), §§ 9.008, 9.101 (West 2006); *Gainous v. Gainous*, 219 S.W.3d 97, 106, 108 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (op. on reh'g). The trial court signed its first QDRO order on January 29, 2014; thus, its jurisdiction over that order expired on February 28, 2014. *See* Tex. R. Civ. P. 329b(d). Once again, some of Henderson-Love's alleged conduct occurred before February 28, 2014, but Michael neither filed nor procured an order on a motion for sanctions before that date. Brenda initiated the next QDRO proceeding—her motion to enter a modified, enforceable QDRO—on June 6, 2014. All of Henderson-Love's alleged conduct in contacting Michael occurred before that date. The trial court's sanctions order did not relate to any alleged actions occurring after Brenda's June 6, 2014 motion to enter a modified QDRO. Henderson-Love's alleged conduct recited in the sanctions order occurred shortly after the final divorce decree was signed and approximately four months before Brenda sought a modified, enforceable QDRO. Because the sanctions order did not pertain to the proceeding seeking a modified QDRO or to the enforcement or clarification of the prior property division in the final divorce decree, the trial court did not have jurisdiction to enter the sanctions

6

order on September 5, 2014. *See In re Brown*, No. 2-07-071-CV, 2007 WL 2460361, at *4 (Tex. App.—Fort Worth Aug. 29, 2007, orig. proceeding) (mem. op.); *Malone v. Hampton*, 182 S.W.3d 465, 468–69 (Tex. App.—Dallas 2006, no pet.); *Wells v. Wells*, No. 03-99-00392-CV, 2000 WL 190530, at *3 (Tex. App.—Austin Feb. 17, 2000, no pet.) (not designated for publication). Because the trial court entered the sanctions order outside its jurisdiction, it was void. *See Martin v. Tex. Dep't of Family & Protective Servs.*, 176 S.W.3d 390, 392–93 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *see also Gainous*, 219 S.W.3d at 107–08 (recognizing divorce court's plenary power and limited, postjudgment power are jurisdictional concepts). We sustain Brenda's first issue. We need not address Brenda's remaining issues attacking the sanctions order. *See* Tex. R. App. P. 47.1.

### III. CONCLUSION

Because the trial court entered the sanctions order outside its subject-matter jurisdiction and because the sanctioned conduct did not occur in relation to Brenda's motion to enter a modified QDRO, the order was void. Accordingly, we vacate the trial court's order and dismiss the appeal. *See* Tex. R. App. P. 43.2(e); *Martin*, 176 S.W.3d at 393–94.

Although we dismiss this appeal based on the trial court's lack of jurisdiction to enter the sanctions order, that does not equate to a holding that Henderson-Love's conduct was not subject to sanctions. *See, e.g.*, *Richmond Condos. v. Skipworth Comm'l Plumbing, Inc.*, 245 SW.3d 646, 658–61 (Tex.

7

App.—Fort Worth 2008, pet. denied) (op. on reh'g). We are duty-bound to address and report potential ethical violations when they come to our attention. *See* Tex. Disciplinary Rules Prof'l Conduct R. 8.03, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9). Henderson-Love's conduct of causing a disturbance at Michael's workplace and repeatedly emailing and attempting to call Michael while she knew he was represented by counsel potentially violated disciplinary rules 4.02(a), 4.04(a), and 8.04(a). Tex. Disciplinary Rules Prof'l Conduct R. 4.02(a), 4.04(a), 8.04(a). Accordingly, we are forwarding a copy of this opinion, the clerk's record, and the reporter's record to the Texas State Bar's Chief Disciplinary Counsel's Office.

PER CURIAM

PANEL: GABRIEL, DAUPHINOT, and GARDNER, JJ.

DELIVERED: August 6, 2015