# NO. 12-15-00203-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BART DALTON,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *CAROL DALTON,*<br>*APPELLEE* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Bart Dalton appeals from post-divorce enforcement orders rendered in favor of his ex-wife Carol Dalton. In six issues, Bart asserts the trial court lacked jurisdiction to render the qualified domestic relations order, the trial court impermissibly altered the terms of the divorce decree, his retirement assets are exempt from seizure, the amount awarded is unsupported by the record, the trial court erred in refusing to vacate an earlier wage withholding order, and the trial court violated Bart's due process rights. Because the evidence does not support the amount awarded, we modify the order to reflect the correct amount. We affirm as modified.

## BACKGROUND

The County Court at Law for Nacogdoches County rendered a decree dissolving the Daltons' marriage on September 29, 2011. The decree gave full faith and credit to, and incorporated, an "Order of Separate Maintenance" (OSM) rendered by the Rogers County District Court of Oklahoma.[1] The OSM disposed of the parties' claims regarding child custody, child support, property division, debt division, spousal support, attorney's fees, and costs. Pursuant to that order, Bart was required to pay Carol "support alimony in the amount of

---

[1] *See **In re Marriage of Dalton***, 348 S.W.3d 290 (Tex. App.−Tyler 2011, no pet.) (held that the OSM was a properly authenticated foreign judgment, and an enforceable final Texas judgment, entitled to full faith and credit).

$1,309,014.00 to be paid to [Carol] at a rate of $6,060.25 per month beginning January 1, 2007, and every month thereafter until paid in full or until further Order of the Court."

Since shortly after the divorce decree was rendered, Carol has attempted to obtain compliance from Bart. Within a month of the divorce, the court rendered a wage withholding order for child support and spousal support. Carol repeatedly moved for enforcement of the order, asserting that Bart was in arrears on child support, spousal support, and other obligations. She requested that, in addition to being required to pay the arrearages, Bart be held in contempt. She also filed a petition for a qualified domestic relations order (QDRO) regarding the full amount of spousal support not covered by the withholding order, along with all judgments for unpaid child support, spousal support, and attorney's fees. Several months later, at hearings in April and May 2012, the court heard Carol's motions, as well as Bart's motion to revoke the wage withholding order. Nothing was resolved at that time.

Apparently, with the exception of certain temporary orders, the parties engaged in extended negotiations before the court ruled on these matters. On April 15, 2015, the court granted Carol's petition for a QDRO and denied Bart's motion to terminate the wage withholding order. On July 10, 2015, a hearing was held on Bart's renewed motion to vacate the withholding order and his motion to release his retirement account funds. That day, the court found Bart in contempt for failure to comply with the terms of the divorce decree and rendered a QDRO assigning to Carol a portion of Bart's retirement benefits for the alimony arrearages and for attorney's fees. Additionally, the trial court dismissed Bart's motion to vacate the withholding order. Bart timely filed a notice of appeal regarding these three orders. On September 3, 2015, having previously found Bart in contempt, the trial court rendered an order that Bart serve forty-five days in jail and pay certain amounts owed. On the same day, the court signed an amended QDRO, changing the amount awarded for attorney's fees but leaving the remaining terms as they were originally. Bart filed a supplemental notice of appeal complaining of the amended QDRO.

#### JURISDICTION

In his first issue, Bart contends the trial court lacked jurisdiction to render the First Amended Qualified Domestic Relations Order. He argues that the divorce decree and OSM did not permit payment of his retirement benefits to Carol. He further argues that the obligation

2

Carol sought to satisfy is "contractual alimony" and associated attorney's fees which cannot be satisfied by his retirement benefits.

The question of jurisdiction, the court's authority to act, is an issue of law we review de novo. *See **Tex. Ass'n of Bus. v. Tex. Air Control Bd.***, 852 S.W.2d 440, 443 (Tex. 1993); ***Marshall v. Priess***, 99 S.W.3d 150, 156 (Tex. App.−Houston [14th Dist.] 2002, no pet.). Texas Family Code Section 9.101 provides that the court that rendered the decree of divorce retains continuing, exclusive jurisdiction to render an enforceable qualified domestic relations order permitting payment of retirement plan benefits to an alternate payee. TEX. FAM. CODE ANN. § 9.101 (West 2006).

Accordingly, the trial court had jurisdiction to render a QDRO because it rendered the divorce decree. *See **id***. The basis for Bart's argument goes not to the question of jurisdiction, but to the viability of the court's order as a means of enforcement of the divorce decree. As we discuss under Bart's third issue, that argument has no merit. We overrule Bart's first issue.


## AMOUNT AND EFFECT OF THE QDRO

In his second issue, Bart asserts that the trial court erred by rendering a QDRO that altered the terms of the divorce decree and the wage withholding order. He argues that the trial court impermissibly modified the decree, the OSM, and the wage withholding order when it ordered him to make alimony payments and imposed payment dates and sources of payment which were not originally provided for in either the OSM or the divorce decree. In his fourth issue, Bart asserts that the amount awarded in the QDRO is unsupported by the record. He argues that no evidence was admitted at the May 7, 2012 hearing.

**Standard of Review**

When interpreting a divorce decree, courts apply the general rules regarding construction of judgments. ***Hagen v. Hagen***, 282 S.W.3d 899, 901 (Tex. 2009). We construe the decree as a whole to harmonize and give effect to the entire decree. *Id*. If the decree is unambiguous, the court must adhere to the literal language used. *Id*.

We review the trial court's ruling on a post-divorce motion for enforcement of a divorce decree under an abuse of discretion standard. ***Gainous v. Gainous***, 219 S.W.3d 97, 103 (Tex. App.−Houston [1st Dist.] 2006, pet. denied) (op. on reh'g). A trial court abuses its discretion only when it has acted in an unreasonable or arbitrary manner, or when it acts without reference

3

to any guiding principles. ***Downer v. Aquamarine Operators, Inc.***, 701 S.W.2d 238, 241-42 (Tex. 1985). In family law cases, legal and factual sufficiency challenges do not constitute independent grounds for asserting error, but are relevant factors in determining whether the trial court abused its discretion. ***In re Marriage of C.A.S. and D.P.S.***, 405 S.W.3d 373, 383 (Tex. App.–Dallas 2013, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient to support the trial court's decision, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion, and (2) erred in its application of that discretion. ***Id***. In evaluating a legal sufficiency challenge, we credit evidence that supports the finding if a reasonable fact finder could, and disregard contrary evidence unless a reasonable fact finder could not. ***City of Keller v. Wilson***, 168 S.W.3d 802, 827 (Tex. 2005). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." ***Id***.

**Applicable Law**

An order enforcing a divorce decree may not amend, modify, alter, or change the division of property made or approved in the decree of divorce. TEX. FAM. CODE ANN. § 9.007 (West 2006). A QDRO is a species of post-divorce enforcement order. ***Gainous***, 219 S.W.3d at 107. The purpose of a QDRO is to create or recognize an alternate payee's right, or to assign an alternate payee the right, to receive all or a portion of the benefits payable to a participant under a retirement plan. 29 U.S.C.A. § 1056(d)(3)(B) (Westlaw through Pub. L. No. 113-295).

**Analysis**

The Oklahoma court's "Order of Separate Maintenance" provided, in pertinent part, that:

> The whole of the agreement of the parties is incorporated herein and set out below.
> Based thereon, the Court **FINDS** and **ORDERS** as follows:
> . . . .
>
> 19. The parties agree that [Carol] is entitled to support alimony in the amount of $1,309,014.00 to be paid to [her] at a rate of $6,060.25 per month beginning January 1, 2007 and every month thereafter until paid in full or until further Order of the Court.

The divorce decree gave full faith and credit to the Oklahoma OSM and approved and affirmed the terms of the OSM. It also incorporated into the divorce decree the terms of that document, which sets out the amount of monthly payments Bart was ordered to make. The QDRO assigned a portion of the benefits in Bart's retirement savings plan to Carol. Specifically, the order

4

assigned to Carol $180,163.56 in support alimony arrearages, plus $8,400.00 in attorney's fees. No ambiguity has been alleged and we detect none. The QDRO uses applicable federal law to enforce the trial court's prior order. *See Quijano v. Quijano*, 347 S.W.3d 345, 353-54 (Tex. App.–Houston [14th Dist.] 2011, no pet.). The court did not modify the divorce decree by its imposition of payment dates and sources of payment. The QDRO does not change the division of property. As allowed by law, it assigns to Carol the right to distribution of funds from Bart's retirement account in satisfaction of the alimony arrearage owed. *See Gainous*, 219 S.W.3d at 106-07. Likewise, the October 20, 2011 wage withholding order mirrors the Oklahoma court's OSM with regard to the amount of spousal support, and it reflects the trial court's April 2011 judgment for arrearages. The QDRO does not alter the wage withholding order. Accordingly, we overrule Bart's second issue.

Regarding the amount awarded, evidence was presented at the April 12, 2012 hearing. Carol testified as to the amount of child support arrearages, spousal support arrearages, and the unpaid mortgages on their home in Oklahoma. The record indicates that, from February 2010 through July 2010, pursuant to a temporary order, Bart was to pay $3,000.00 per month, and then the amount would revert to $6,060.25 per month. On April 6, 2011, Carol obtained a judgment for $39,897.06 in arrearages for unpaid alimony from February 2010 through November 2010, including $3,000.00 for each of the six months from February 2010 through July 2010 and $6,060.25 for each of the remaining months, minus credit for two payments. Additionally, Carol was awarded $6,000.00 in attorney's fees.

Carol presented Exhibit M-4 which shows that Bart was to pay $6,060.25 per month from January 2007 through March 2012 for a total of $375,735.50 due for support alimony in that time period. This exhibit also showed that, during that time period, Bart paid a total of $192,514.14 in support alimony. The exhibit indicates that subtracting the amount paid from the total owed for this time period leaves an arrearage of $183,221.36. If we looked solely to this exhibit, it would support the trial court's award of $180,163.56.

However, Carol's Exhibit M-3 indicates that, between November 2011 and April 2012, Bart paid $9,057.80 which was applied to the 2011 judgment. It also shows that, during that same time period, he paid $9,008.47 which was applied to his current obligations. Inexplicably, the $9,057.80 is not reflected on Exhibit M-4 while the $9,008.47 is. Additionally, Exhibit M-3 reflects the six months of $3,000.00 payments while Exhibit M-4 does not. Rather, Exhibit M-4

indicates that Bart owes $6,060.25 for each of the six months. Therefore, Exhibit M-4 mistakenly inflates Bart's alimony obligation by $18,361.50 for this time period and mistakenly fails to credit him with the $9,057.80 payment. After these adjustments, Bart's total alimony obligation for the time period under consideration was $357,374.00 and the total amount he paid was $201,571.94. Subtracting the total paid from the total obligation leaves arrearages in the amount of $155,802.06. Accordingly, the evidence does not support the trial court's award of $180,163.56. The evidence conclusively establishes that Bart is in arrears in the amount of $155,802.06. *See City of Keller*, 168 S.W.3d at 815-16. Because the trial court abused its discretion in awarding an amount not supported by the record, we modify the QDRO to reflect the correct amount. *See Eberstein v. Hunter*, 260 S.W.3d 626, 629 (Tex. App.−Dallas 2008, no pet.). We sustain Bart's fourth issue.

**SEIZURE OF RETIREMENT ASSETS**

In his third issue, Bart contends that the trial court erred by ordering the seizure of his retirement assets. He characterizes the award at issue as contractual alimony and asserts that it is nothing more than a debt. He argues that Texas Property Code Section 42.0021 exempts retirement assets from seizure for the satisfaction of a debt. Additionally, Bart asserts that the contractual alimony provision does not comply with the Texas Family Code and neither the OSM nor the divorce decree orders him to pay alimony to Carol. Therefore, his argument continues, there is no "domestic relations order" upon which the trial court could have entered the QDRO.

**Applicable Law**

In Texas, alimony agreements incorporated into a final divorce decree are treated as contracts governed by the law of contracts. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex. 1986). Accordingly, in Texas, a person may contract to support his spouse and children, and that obligation, to the extent it exceeds his legal duty, is a debt. *Ex parte Hall*, 854 S.W.2d 656, 658 (Tex. 1993). Texas Property Code Section 42.0021 provides that a person's right to assets in pension plans and retirement accounts are, to an extent, exempt from seizure for the satisfaction of debts. TEX. PROP. CODE ANN. § 42.0021 (West 2014).

The Employee Retirement Income Security Act (ERISA) is a comprehensive federal system regulating employee benefit plans to protect contractually defined benefits. *Firestone*

*Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113, 109 S. Ct. 948, 956, 103 L. Ed. 2d 80 (1989). ERISA includes expansive preemption provisions, which are intended to ensure that the regulation of employee benefit plans be exclusively a federal concern. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523, 101 S. Ct. 1895, 1906, 68 L. Ed. 2d 402 (1981). Congress has statutorily provided that ERISA shall supersede any and all state laws insofar as they may relate to any employee benefit plan. 29 U.S.C.A. § 1144(a) (Westlaw through Pub. L. No. 109-280); *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63-67, 107 S. Ct. 1542, 1546-48, 95 L. Ed. 2d 55 (1987); *Barnett v. Barnett*, 67 S.W.3d 107, 112 (Tex. 2001). A law relates to an employee benefit plan if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97, 103 S. Ct. 2890, 2900, 77 L. Ed. 2d 490 (1983).

ERISA requires that a pension plan must provide that benefits may not be assigned or alienated. 29 U.S.C.A. § 1056(d)(1) (Westlaw through Pub. Law 113-295.) However, ERISA excepts from this antiassignment rule state laws providing for rights and payments under a QDRO. *Id*. § 1056(d)(3)(A) (Westlaw through Pub. Law 113-295). ERISA defines "domestic relations order" as any judgment, decree, or order, including approval of a property settlement agreement, which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and is made pursuant to a state domestic relations law. *Id*. § 1056(d)(3)(B)(ii).

## Analysis

Bart contends that the award at issue is contractual alimony and the trial court's order does not meet the ERISA definition of "domestic relations order." We disagree. Bart and Carol, while residents of Oklahoma, entered into an agreement settling their claims concerning, among other things, spousal support. This agreement was incorporated into the Oklahoma court's OSM. The Nacogdoches County Court at Law gave full faith and credit to the OSM and incorporated it into the divorce decree. Pursuant to the Texas Family Code, Oklahoma law governs the nature of payments under the support order. Act of May 28, 2003, 78th Leg., R.S., ch. 1248, § 34, 2003 Tex. Gen. Laws 3521, 3533 (amended 2015) (current version at TEX. FAM. CODE ANN. § 159.604(a)(1) (West Supp. 2016)). Under Oklahoma law, when the agreement was incorporated into the judgment, the agreement was extinguished and the rights of the parties were no longer contractual but became determinable and enforceable based upon the judgment. *Dickason v. Dickason*, 607 P.2d 674, 677 (Okla. 1980). Oklahoma law authorizes the award of

alimony as support allowance in a decree of separate maintenance. OKLA. STAT. ANN. tit. 43, §§ 108, 129 (Westlaw through 2016 2d Sess.); **Roberts v. Roberts**, 657 P.2d 153, 156 n.2 (Okla. 1983). Accordingly, the divorce decree relates to the provision of alimony payments and is made pursuant to a state domestic relations law, thereby meeting the ERISA definition of "domestic relations order." 29 U.S.C.A. § 1056(d)(3)(B)(ii).

Giving full faith and credit to the OSM, under Oklahoma law, which governs the nature of the payments, the agreement is not contractual and therefore not debt. *See **Ex parte Hall***, 854 S.W.2d at 658. It follows that, because the support award is not debt, property code Section 42.0021 does not apply here. TEX. PROP. CODE ANN. § 42.0021; **Dickason**, 607 P.2d at 677. Additionally, the award was made pursuant to a state domestic relations law and ERISA preempts Section 42.0021 to the extent it may relate to Bart's retirement plan. *See **Barnett***, 67 S.W.3d at 112. Therefore, the trial court did not err in ordering the seizure of Bart's retirement benefits. We overrule Bart's third issue.

## WITHHOLDING ORDER

In his fifth issue, Bart contends the trial court erred in refusing to vacate the withholding order because the Family Code's chapter eight remedy of garnishment of wages is not available. He argues that the obligation at issue is contractual alimony, an agreement to pay maintenance under Section 7.006 of the Texas Family Code, which is not enforceable by garnishment of wages. Bart further asserts that garnishment in this situation is prohibited by Article 16, Section 28 of the Texas Constitution which allows garnishment for court ordered spousal maintenance.

### Waiver

Carol asserts that the trial court, by its July 10, 2015 order, properly dismissed Bart's motion to vacate the withholding order based on res judicata. The withholding order was signed on October 20, 2011. Bart filed a motion to vacate the withholding order in 2012, which the trial court denied on April 15, 2015. Without citation to authority, Carol contends that the April 15 order was appealable and became final when Bart did not appeal it, and therefore, his complaint about the April 15 order has been waived. We disagree.

An appeal may be taken only from a final judgment, unless a statute specially authorizes an interlocutory appeal. **Lehmann v. Har-Con Corp.**, 39 S.W.3d 191, 195 (Tex. 2001). A judgment issued without a conventional trial is final for purposes of appeal if it actually disposes

of all claims and parties then before the court, or it states with unmistakable clarity that it is a final judgment as to all claims and parties. *Id*. at 192-93.

Here, the April 15 order denied Bart's motion to terminate the withholding order and ordered that the withholding order shall remain in full force and effect. There is no mention of other matters or finality. Although the trial court had granted Carol's petition for a QDRO, it had not yet actually rendered a QDRO. Thus, the issue of enforcement of the spousal support award, of which wage withholding was a part, remained pending. Therefore, the April 15 order denying Bart's motion to terminate the withholding order was not final. *See id*. Further, there is no statutory authorization for an interlocutory appeal that would be applicable in this instance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a) (West Supp. 2016). While the statute, under certain circumstances, authorizes a trial court to permit an appeal from an order that is not otherwise appealable, this provision of the statute was not invoked. *See id*. Therefore, the April 15, 2015 order was not appealable, and an appeal from the July 10, 2015 order is permissible.

## Wage Withholding

Pursuant to the Texas Family Code, Oklahoma law governs the nature of payments under the support order in this case. Act of May 28, 2003, 78th Leg., R.S., ch. 1248, § 34, 2003 Tex. Gen. Laws 3521, 3533. As explained above, under Oklahoma law, when the parties' agreement was incorporated into the judgment, their agreement was extinguished, and the rights of the parties were no longer contractual but became enforceable based on the judgment. *See Dickason*, 607 P.2d at 677. Pursuant to the Uniform Interstate Family Support Act, a responding tribunal of this state shall apply the procedures and remedies of this state to enforce current support and collect arrears and interest due on a support order of another state registered in Texas. TEX. FAM. CODE ANN. § 159.604(c) (West Supp. 2016). Thus, we look to Texas law to determine if wage withholding is an available remedy to enforce the Oklahoma OSM.

Texas Family Code Section 8.101(a) permits income withholding in a proceeding in which periodic payments of spousal maintenance are ordered or enforced. *Id*. § 8.101(a) (West Supp. 2016). Bart's emphasis on the parties' agreement on which the OSM was based is misplaced. Under Oklahoma law, that agreement was extinguished. Therefore, Carol sought to enforce a court order for spousal maintenance, not a contract for support. The Texas Constitution and the Texas Family Code permit wage withholding to collect court ordered spousal maintenance. TEX. CONST. art. XVI, § 28; TEX. FAM. CODE ANN. § 8.101(a). Therefore,

the trial court did not err in refusing to vacate the wage withholding order.  We overrule Bart's fifth issue.

**DUE PROCESS**

In his sixth issue, Bart asserts that the trial court violated his rights to due process by applying Oklahoma law to enforce orders rendered in a Texas court as stated in conclusions of law two, three, four, and five.  He argues that the QDRO is void because "it was beyond the power of the court to apply Oklahoma law in this Texas action to enforce Texas orders."

This court reviews de novo a trial court's conclusions of law.  *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  We are not bound by the trial court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence.  *Fulgham v. Fischer*, 349 S.W.3d 153, 157-58 (Tex. App.−Dallas 2011, no pet.).

Conclusions of law two and three concern enforcement by contempt.  This court lacks jurisdiction to consider complaints concerning contempt in this appeal.  *See Tracy v. Tracy*, 219 S.W.3d 527, 530 (Tex. App.−Dallas 2007, no pet).  Conclusion of law four states that Texas and Oklahoma law provide for the recovery of attorney's fees for nonpayment of support alimony and amounts due to mortgage lenders.  The Texas Family Code provides that the trial court may award attorney's fees in a post-decree enforcement proceeding.  TEX. FAM. CODE ANN. § 9.014 (West Supp. 2016).  Because we apply Texas law to enforce the Oklahoma support order, whether the court concluded that Oklahoma law provides for the recovery of attorney's fees is irrelevant.  *See id*. § 159.604(c). We note also that Bart has not complained of the attorney's fees award.

In conclusion of law five, the trial court concluded that Texas law and Oklahoma law provide for wage withholding for both current and delinquent support alimony and attorney's fees incurred for the collection of same.  As explained above, the trial court properly applied Texas law regarding wage withholding.  *See id*.  Therefore, its determination regarding whether Oklahoma law also allows wage withholding to collect support alimony and attorney's fees is irrelevant.  The trial court's conclusions of law do not violate Bart's rights to due process.  To the extent we have jurisdiction over it, we overrule Bart's sixth issue.

10

## DISPOSITION

In conformance with the evidentiary record, we modify that part of the QDRO assigning Carol $180,163.56 to reduce the amount to $155,802.06.  As *modified*, we *affirm* the trial court's First Amended Qualified Domestic Relations Order.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered January 11, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 11, 2017**

**NO. 12-15-00203-CV**

**BART DALTON,**
Appellant
V.
**CAROL DALTON,**
Appellee

Appeal from the County Court at Law

of Nacogdoches County, Texas (Tr.Ct.No. C0824936)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the order of the court below.

In accordance with this Court's opinion of this date, it is therefore ORDERED, ADJUDGED and DECREED that the First Amended Qualified Domestic Relations Order of the trial court is **modified** to reflect that the amount assigned to the Alternate Payee is $155,802.06.

It is FURTHER ORDERED, ADJUDGED and DECREED that the First Amended Qualified Domestic Relations Order of the court below is **affirmed** as modified.

It is FURTHER ORDERED that all costs of this appeal are hereby adjudged against the party incurring same; and that the decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*